IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IAN G.,[1]                                    3:18-cv-01680-BR

       Plaintiff,                       OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.


**GEORGE J. WALL**
Law Offices of George J. Wall
825 N.E. 20th Ave, Suite 330
Portland, OR  97232
(503) 236-0068

      Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

─────────────────────

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3710

          Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Ian G. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.[2]  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

---

    [2] Plaintiff initially applied for benefits as a child and reached adulthood in December 2015.  Plaintiff has withdrawn the child-disability portion of his claim and seeks only SSI disability benefits under the standards applicable to adult claims.

## ADMINISTRATIVE HISTORY

On October 24, 2014, Plaintiff protectively filed his application for SSI benefits.  Tr. 29, 297.[3]  As noted, Plaintiff initially alleged a claim for childhood disability, but on May 13, 2019, he amended his claim to seek only adult disability and now asserts a disability onset date of December 7, 2015. Pl.'s Brief (#18) at 2.  Plaintiff's application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held hearings on May 2, 2017, and June 15, 2017. Plaintiff and a vocational expert (VE) testified at the hearing on May 2, 2017.  Tr. 71-97.  Plaintiff was not present at the hearing on June 15, 2017.  A medical expert (ME) testified at that hearing, and Plaintiff was represented by an attorney at both hearings.  Tr. 98-125.

On August 30, 2017, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 29-53.  Plaintiff requested review by the Appeals Council.  On July 26, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's

---

[3]  Citations to the official Transcript of Record (#9) filed by the Commissioner on January 29, 2018, are referred to as "Tr."

decision became the final decision of the Commissioner.

Tr. 1-4.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On September 18, 2018, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on December 7, 1997.  Tr. 33, 297. Plaintiff was 18 years old on his alleged disability onset date. Tr. 33.  Plaintiff received formal education through the second grade and received home schooling thereafter.  Tr. 82, 104. Plaintiff does not have any past relevant work experience.  Tr. 51.

Plaintiff alleges disability due to bipolar disorder, social anxiety, cognitive disorder, autism, and Attention Deficit Hyperactivity Disorder (ADHD).  Tr. 126.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 34-40, 49-51.


## STANDARDS

The initial burden of proof rests on the claimant to

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110

(9th Cir. 2012).  To meet this burden, a claimant must

demonstrate his inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or

mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when

there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence.  *McLeod v. Astrue*,

640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,*

276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

"relevant evidence that a reasonable mind might accept as

adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9th Cir. 2009)).  It is more than a mere scintilla [of

evidence] but less than a preponderance.  *Id.* (citing *Valentine*,

574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. § 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v.*

*Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in any substantial gainful activity. Tr. 34, 51.

At Step Two the ALJ found Plaintiff has the severe

impairments of "mental health conditions variously described as depression, social anxiety, attention deficit, and learning disorders."  Tr. 34, 46.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 35, 46.  The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:  can only understand and remember simple instructions; has sufficient concentration, persistence, or pace to complete simple, routine tasks for a normal workday and workweek with normal work breaks; can work at a regular but not fast production pace; should not have interactions with the general public and should have only occasional, brief, superficial interactions with coworkers; and should be in a workplace with few changes to the work setting.  Tr. 48.

At Step Four the ALJ concluded Plaintiff does not have relevant past work.  Tr. 51.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as janitor and "cleaner II."  Tr. 51-52.  Accordingly, the ALJ found Plaintiff is not

disabled.  Tr. 52-53.

<u>**DISCUSSION**</u>

Plaintiff contends (1) the Appeals Council erred when it failed to evaluate evidence submitted after the hearing before the ALJ; (2) the ALJ erred when she did not include Plaintiff's Autism Spectrum Disorder as a severe impairment; and (3) the ALJ failed to properly evaluate the medical opinions of Karla Causeya, Psy.D, an examining psychologist, and John Simonds, M.D., a testifying medical expert, in addition to other medical evidence.

**I.**   **The Court has considered the additional evidence submitted to the Appeals Council.**

Plaintiff contends the additional evidence he submitted to the Appeals Council with his request for reconsideration directly relates to his functional limitations and, according to Plaintiff, the Appeals Council erred when it failed to consider such evidence.

The Commissioner, in turn, contends the evidence submitted to the Appeals Council does not undermine the ALJ's decision, and, therefore, the Appeals Council properly disregarded that evidence.

**A.    Standards**

The district court does not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision because the Appeals Council decision is not a final agency action.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  When, however, a claimant "submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."  *Brewes*, 682 F.3d 1157, 1159-60, 1162-63 (9th Cir. 2012).

**B.    Analysis**

As noted, Plaintiff requested review of the ALJ's decision by the Appeals Council.  Tr. 295.  Plaintiff also submitted to the Appeals Council records from the Oregon Department of Human Services (DHS) (Tr. 12-23, 59-69) and from Inclusion, Inc., (Tr. 25) related to Plaintiff's eligibility for disability services from the State of Oregon.

The Appeals Council denied Plaintiff's request for review and stated there was not any reason to review the ALJ's

decision.  Tr. 1.  With regard to the evidence submitted by

Plaintiff, the Appeals Council stated:

> You submitted evidence from [DHS], dated
> August 3, 2017, to August 9, 2017 (13 pages)
> [Tr. 59-70].  We find this evidence does not show
> a reasonable probability that it would change the
> outcome of the decision.  We did not exhibit this
> evidence.
>
> You also submitted evidence from [DHS], dated
> October 1, 2017 (14 pages)[Tr. 11-23]; and
> Inclusion Inc., dated September 28, 2017
> (3 pages)[Tr. 24-25].  The [ALJ] decided your
> case through August 30, 2017.  This additional
> evidence does not relate to the period at issue.
> Therefore, it does not affect the decision about
> whether you were disabled beginning on or before
> August 30, 2017.

Tr. 2.  The Appeals Council included the records as part of the

administrative record in this case.

Plaintiff contends all of these records relate back to

the period of his disability from December 7, 2015; the Appeals

Council's reasons for rejecting this evidence were incorrect;

the additional records show he suffers from Autism Spectrum

Disorder; the additional records support a finding of

disability; and the Court must consider this evidence when

making its determination.

**1.   Notification Records from DHS**

On August 9, 2017, DHS notified Plaintiff that he

qualified for Developmental Disability Services and stated:

> A review of the available records supports
> your eligibility because it was determined
> that you have a condition of Autism Spectrum
> Disorder that originated in the develop-
> mental years, is likely to continue[,] and
> significantly impacts your adaptive
> behavior.

Tr. 59. The Notice indicated it was based on various records from Plaintiff's providers, including a Psycho-Diagnostic Evaluation (Tr. 905-918) dated April 24, 2017, and a Medical Statement (Tr. 70) dated August 3, 2017, by Karla Rae Causeya, Ph.D., an examining psychologist. Tr. 61.

In *Taylor v. Commissioner of Social Security Administration* the plaintiff proffered to the Appeals Council a psychiatric evaluation and medical-source statement that had not been submitted to the ALJ. 659 F.3d 1228, 1231 (9th Cir. 2011). The new evidence post-dated the ALJ's decision, but it was based on treatment that occurred during the relevant disability period. *Id.* The Appeals Council did not consider the evidence. The Ninth Circuit found because the evaluation and statement concerned the plaintiff's limitations during the relevant period of disability, the Appeals Council should have considered the records. *Id.* at 1233. The Ninth Circuit held:

> Because [the doctor's] opinion concerned his
> assessment of [the plaintiff's] mental health
> since his alleged disability onset date in 1999,
> it related to the period before [the plaintiff's]

disability insurance coverage expired in 2004,
and before the ALJ's decision in 2006.  Thus,
[the physician's] opinion should have been
considered.  [Citation omitted].  Where the
Appeals Council was required to consider
additional evidence, but failed to do so, remand
to the ALJ is appropriate so that the ALJ can
reconsider its decision in light of the
additional evidence.

*Id.*

In *Powell v. Colvin*, the court relied on *Taylor* and
found:  "Although [the new materials] were dated after the ALJ's
decision, [the physician] indicated that he was able to infer
that [the claimant's] mental limitations existed at the present
level dating back [two years prior to the ALJ's decision.]"
No. 6:14-cv-01900-SI, 2016 WL 706199, at *1 (D. Or. Feb. 22,
2016).  The court remanded the matter to the ALJ for
consideration of the new evidence.  *Id.,* at *4-5.

Here Dr. Causeya's April 2017 Evaluation, which
was relied on by the State of Oregon when making its October
2017 determination to award benefits, was part of the record and
was specifically considered by the ALJ.  Dr. Causeya's August
2017 Statement merely summarizes the findings of her April 2017
Evaluation.  Although the Court concludes the DHS records from
August 9, 2017, and Dr. Causey's statement dated August 3, 2017,
may be relevant to Plaintiff's claim, the Court does not have

jurisdiction to review the decision of the Appeals Council in that regard, and, in any event, the underlying records that support the October 2017 decision by the State were already a part of the record and were considered by the ALJ when she reached her decision.

Accordingly, the Court will consider these records as part of its review of the ALJ's decision.

### 2.    Post-Notification Records

On September 8, 2017, Plaintiff was notified by Inclusion, Inc., that he would receive 70 hours per week of attendant care.  Tr. 25.  On October 1, 2017, Plaintiff received an Individual Support Plan from DHS regarding the services that Inclusion would provide.  Tr. 12-23.

The October 2017 DHS records and the September 2017 letter relate to the award of benefits from the State of Oregon on August 9, 2017.  The Court has considered these records and concludes they do not establish Plaintiff was disabled before August 30, 2017.

Accordingly, these records are not relevant to Plaintiff's amended disability claim and will not be considered by the Court.

## II.  The ALJ did not err at Step Two when she did not include Autism Spectrum Disorder as a severe impairment.

Plaintiff contends the ALJ erred at Step Two when she failed to identify Plaintiff's Autism Spectrum Disorder as a severe impairment.

The Commissioner, in turn, contends the ALJ concluded Plaintiff has a combination of severe impairments, and, therefore, the ALJ resolved Step Two in Plaintiff's favor. Thus, according to the Commissioner, any failure by the ALJ to find and to include Plaintiff's autism impairment did not prejudice Plaintiff.

### A.  Standards

The inquiry for Step Two is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)(Step Two inquiry intended to identify claimants whose medical impairments are so slight that it is unlikely they would be found disabled). *See also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)(Step Two impairment "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."(emphasis in original)).

The claimant bears the burden to provide medical evidence to establish at Step Two that he has a severe

impairment.  20 C.F.R. § 404.1512.  An impairment or combination

of impairments is "not severe only if the evidence establishes a

slight abnormality that has no more than a minimal effect on an

individual's ability to work."  *Webb*, 433 F.3d at 686.  At Step

Two the ALJ must consider the combined effect of all the

claimant's impairments on his ability to function without regard

to whether each alone is sufficiently severe.  *Howard ex rel.*

*Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003).  *See also*

*Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir.1996); 42

U.S.C. § 423(d)(2)(B); 20 C.F.R. § 416.923.

    If the ALJ determines a claimant is severely impaired

at Step Two, the ALJ continues with the sequential analysis and

considers all of the claimant's limitations.  SSR 96-9p,

available at 1996 WL 374184 (July 2, 1996).  Step Two is "merely

a threshold determination of whether the claimant is able to

perform his past work."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076

(9th Cir. 2007).  If an ALJ fails to consider limitations

imposed by an impairment at Step Two but considers them at a

later step in the sequential analysis, any error at Step Two is

harmless.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

*See also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

**B.    Analysis**

As noted, the ALJ resolved Step Two in Plaintiff's favor when she found Plaintiff has severe impairments of "mental health conditions variously described as depression, social anxiety, attention deficit, and learning disorders."  Tr. 34, 46.  Based on these impairments, the ALJ determined Plaintiff was able to perform a full range of work at all exertional levels, but the ALJ, nevertheless, included in her assessment of Plaintiff's RFC nonexertional limitations based on Plaintiff's mental impairments.  Tr. 48.

On April 24, 2017, Dr. Causeya diagnosed Plaintiff with Autism Spectrum Disorder and "other specified depressive disorders" as the causes of Plaintiff's limitations.  Tr. 916. The ALJ, however, did not include Autism Spectrum Disorder as a severe impairment.  The ALJ concluded Dr. Causeya's diagnosis of Autism Spectrum Disorder and her assessment of Plaintiff's limitations were not supported by the medical records and were contrary to the opinion of Dr. Simonds, the medical expert who testified at the hearing on June 15, 2017.  Tr. 50.

Although the ALJ did not find Autism Spectrum Disorder was a severe impairment at Step Two, she thoroughly considered Plaintiff's mental-health limitations in the remaining steps of

the sequential analysis and in her assessment of Plaintiff's
RFC. Tr. 49-51. The ALJ noted: "Throughout [Plaintiff's]
medical treatment, [Plaintiff] has exhibited a constellation of
symptoms that have resulted in varying assessments of [his]
mental health conditions depending on [his] presentation during
different examinations. . . . I have considered all mental
health symptoms regardless of diagnosis". Tr. 34-35. The ALJ,
however, took into account Plaintiff's mental-health limitations
when assessing Plaintiff's RFC and limited Plaintiff to jobs
with simple, routine tasks; no interactions with the general
public; only occasional brief and superficial interactions with
coworkers; and a workplace with few changes to work settings.
Tr. 48.

Accordingly, to the extent that the ALJ may have erred
when she did not include Autism Spectrum Disorder as a severe
impairment, the Court concludes it was harmless error because
the ALJ found Plaintiff had severe impairments at Step Two and
also considered Plaintiff's mental-health limitations in
subsequent steps of the sequential analysis.

**III. The ALJ did not err in her evaluation of the medical
opinions of Dr. Causeya and Dr. Simonds nor in her
evaluation of the other medical evidence.**

Plaintiff contends the ALJ failed to evaluate properly the

medical opinions of Dr. Causeya, an examining physician,

Dr. Simonds, the testifying medical expert, and the "other

clinical evidence."

**A. Standards**

"In disability benefits cases . . . physicians may

render medical, clinical opinions, or they may render opinions

on the ultimate issue of disability - the claimant's ability to

perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.

2014). "In conjunction with the relevant regulations, [courts]

have . . . developed standards that guide [the] analysis of an

ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc.*

*Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is

contradicted by another doctor's opinion, an ALJ may only reject

it by providing specific and legitimate reasons that are

supported by substantial evidence." *Id.* Even when

contradicted, a treating or examining physician's opinion is

still owed deference and will often be "entitled to the greatest

weight . . . even if it does not meet the test for controlling

weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An

ALJ can satisfy the "substantial evidence" requirement by

"setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation
thereof, and making findings." *Reddick,* 157 F.3d at 725. "The
ALJ must do more than state conclusions. He must set forth his
own interpretations and explain why they, rather than the
doctors', are correct." *Id.* (citation omitted).

    B.    **Analysis**

          1.    **Drs. Causeya and Simonds**

                Plaintiff contends the ALJ failed to provide
clear and convincing reasons for discounting the medical opinion
of Dr. Causeya and improperly relied on the opinion of
Dr. Simonds.

                As noted, Dr. Causeya examined Plaintiff on
April 24, 2017, and concluded Plaintiff had Autism Spectrum
Disorder, but Dr. Causeya found Plaintiff did not meet the
criteria of Major Depressive Disorder or Persistent Depressive
Disorder. Tr. 913. The ALJ gave "little weight" to
Dr. Causeya's opinion on the grounds that her opinion was
inconsistent with other objective evidence of Plaintiff's mental
functioning, with Plaintiff's routine and conservative course of
mental-health history, and with Plaintiff's positive response to
treatment. Tr. 51.

                On the other hand, the ALJ gave "great weight" to

Dr. Simonds's testimony that Plaintiff did not have Autism
Spectrum Disorder. The ALJ concluded Dr. Simonds's opinion was
supported by the medical record that showed Plaintiff had a
conservative course of mental-health treatment as an adult, that
he had a positive response to that treatment, and that the
treatment was consistent with the objective evidence of mental
functioning. Tr. 50. For example, the ALJ noted the opinion of
Myco Van, Psy.D., a psychotherapist who examined Plaintiff on
August 25, 2014. Dr. Van concluded it was "unlikely" Plaintiff
had Autism Spectrum Disorder based on standardized testing that
did not indicate Plaintiff had impaired perception typically
associated with autism, and Dr. Van also found Plaintiff's
unstable childhood and history of homeschooling had resulted in
his social anxiety. Tr. 397. In addition, the ALJ noted state-
agency psychologists, Arthur Lewey, Ph.D., and Joshua Boyd,
Psy.D., reported in contrast to Dr. Causey's opinion that
Plaintiff had marked limitations in numerous areas of
functioning and that Plaintiff had less than marked limitations
in acquiring and using information, in attending and completing
tasks, in interacting and relating with others, and in caring
for himself. Tr. 132-34, 145-46.

On this record the Court concludes the ALJ did

not err when he discounted the opinion of Dr. Causeya because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

### 2. Other Medical Sources

Plaintiff contends the ALJ improperly rejected the opinions of other treating medical sources and did not provide germane reasons for doing so.

### a. Standards

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 416.913. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. §§ 416.913(a). Medical sources classified as "other sources" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. 20 C.F.R. §§ 416.913(d).

With respect to "other sources," the Social Security Administration notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions

> previously handled primarily by physicians
> and psychologists. Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity
> and functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include the length of time the source has known the
claimant, the number of times and frequency that the source has
seen the claimant, the consistency of the source's opinion with
other evidence in the record, the relevance of the source's
opinion, the quality of the source's explanation of his opinion,
and the source's training and expertise. SSR 06-03p, at *4. On
the basis of the particular facts and the above factors, the ALJ
may assign a not-acceptable medical source either greater or
lesser weight than that of an acceptable medical source. SSR
06-03p, at *5-6. The ALJ, however, must explain the weight
assigned to such sources so that a claimant or subsequent
reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6.
"The ALJ may discount testimony from . . . 'other sources' if
the ALJ 'gives reasons germane to each witness for doing so.'"
*Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r Soc. Sec.
Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

**b. Analysis**

On June 20, 2014, Cash Freitas, M.S.W., at Catholic Community Services performed a Mental Health Assessment of Plaintiff and diagnosed Plaintiff with "autistic disorder." Tr. 425. On June 26, 2014, Daniel Jass, Q.M.H.P., noted Plaintiff had a pervasive developmental disability disorder. Tr. 471. The ALJ, however, noted a qualified mental-health professional (QMHP) who reported a diagnosis of Asperger's disease and developmental disorders in mid-2014 and a social worker who reported an autism diagnosis in 2014 were not acceptable medical sources to establish a medically determinable impairment. Tr. 34. The ALJ instead relied on the examination conducted by Kenneth Holladay, M.D., a treating psychiatrist, on July 23, 2014, who diagnosed Plaintiff with bipolar disorder but did not diagnose Plaintiff with autism. Tr. 34, 398. The ALJ also noted Manuel Gomes, Ph.D., an examining psychologist, reported on April 28, 2015, that Plaintiff had a bipolar disorder, but he did not diagnose Plaintiff with Autism Spectrum Disorder. Tr. 34, 544.

On this record the Court concludes the ALJ did not err when she discounted the opinions of "other sources" because the ALJ provided legally sufficient reasons supported by

substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 17th day of December, 2019.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge